1   Timothy H. Power SBN 45780
    19201 Sonoma Highway, #246
2   Sonoma, California 95476
    Telephone: (707) 721-1141
3   Telephone: (707) 938-7183
    Facsimile: (707) 938-7185
4   E-mail: thpower65@gmail.com3333

5   Attorney for Plaintiff, SERVICE DISABLED
    VETERAN OWNED SMALL BUSINESS
6   NETWORK, INC. A nonprofit corporation

7

8                   UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                      SAN FRANCISCO DIVISION

10  SERVICE DISABLED VETERAN OWNED          )
    SMALL BUSINESS NETWORK, INC. a          )
11  Nonprofit corporation,                  )
                                            )   No. C 11-06145 WHA
12  Plaintiff,                              )
                                            )
13              vs                          )   RESPONSE TO MOTION TO
                                            )   DISMISS
14  DEPARTMENT OF VETERANS AFFAIRS,         )
                                            )   HEARING DATE:  March 15, 2012
15  and ERIC K. SHENSEKI, in his official   )   HEARING TIME: 8:00 am
    capacity as SECRETARY OF THE            )   JUDGE: William H. Alsup
16  DEPARTMENT OF VETERANS AFFAIRS,         )
                                            )
17              Defendants.                 )
                                            )
18  _____)

19          Plaintiff by its attorney, Timothy H. Power, responds to Defendant's motion to dismiss

20  this action.  This response is based upon Plaintiff's Complaint and the attached Memorandum of

21  Points and Authorities.

22

23          Dated: February 23, 2012

24

25          /s/ Timothy H. Power

26          Attorney for Plaintiff

27

28  Response to Defendant's Motion to Dismiss     1                    WHA 11-6145

1                          MEMORANDUM OF POINTS AND AUTHORITIES

2          I.      INTRODUCTION

3                  Defendant presents two arguments why Plaintiff's action should be dismissed.  First, that

4     the complaint is not ripe because it seeks to enjoin future activity that has not yet occurred and

5     from which SDVOSBN has identified no actual harm.  Second, that this action is within the

6     exclusive jurisdiction of the Court of Federal Claims under 28 U.S.C. §1491(b).

7                  Both of these arguments are without merit.  In Plaintiff's response to Defendant's cross

8     motion for summary judgment Plaintiff addressed the same argument that this action is within

9     the exclusive jurisdiction of the Court of Federal Claims.  Plaintiff's position will again be

10    presented at the end of this memorandum.  This memorandum will primarily be a response to

11    Defendant's position that this action is not ripe for adjudication by this court.

12         II.     BACKGROUND

13                 By this action Plaintiff seeks to prevent the Department of Veterans Affairs (VA) from

14    acquiring supplies and service using the Federal Supply Service, administered by the General

15    Services Administration, instead of set-asides for veteran owned small businesses as mandated

16    by Congress in the Veterans First Contracting Program, 38 U.S.C. §§8127 and 8128.

17                 Despite losing a protest that challenged the VA's policy of acquiring supplies and

18    services using the FSS without conducting market research to see if a veteran set-aside was

19    required, *Aldevra*, B-405271 (October 11, 2011), the VA decided that it would continue its

20    policy of giving preference to the FSS over veteran set-asides.  In a press release dated October

21    28, 2012, attached to Defendant's motion as Ex. A, the VA announced the GAO decision would

22    not change how the VA acquired supplies and services.  "The GAO recommendation does not

23    change how VA will acquire goods and services in support of its mission."

24                 Members of Plaintiff organization challenged the VA on its policy of preferring the FSS

25    over veteran set-asides prior to the decision in *Aldevra* and hoped that that decision would settle

26    the issue of preference of FSS and veteran set-asides.  When the VA annouced that it was going

27    to continue its policy of preferring the FSS over veteran set-asides Plaintiff filed this action.

28    Response to Defendant's Motion to Dismiss       2                  WHA 11-6145

1    III.    STATEMENT OF ISSUES

2            A.    <u>Whether This Action is Ripe for Judicial Review</u>

3            B.    <u>Whether This Court Has Jurisdiction</u>

4    IV.    PLAITIFF'S ACTION IS RIPE FOR ADJUDICATION

5            A.    <u>The Supreme Court's Holdings on Ripeness</u>

6        Defendant relies upon the decision of *National Park Hospitality Assoc. v. Dept. of the*

7    *Interior*, 538 U.S. 803 (2003) but that decision actually supports the ripeness of Plaintiff's

8    action.

9        The facts in *National Park Hospitality* (*NPH*) were that the National Park Service issued

10   a regulation defining a concession contract which stated that they were not contracts within the

11   meaning of the Contract Disputes Act. This was issued to resolve a dispute between the NPS and

12   the Interior Board of Contract Appeals.  The IBCA treated concession contracts as covered by

13   the CDA.

14       Petitioner in the Supreme Court challenged the validity of the regulation defining

15   concession contracts.  The Court reviewed whether the challenge to the regulation was ripe for

16   judicial action.

17           Ripeness is a justiciability doctrine designed "to prevent the courts,
     through avoidance of premature adjudication, from entangling themselves in

18   abstract disagreements over adminitrative policies, and also to protect the
     agencies from judicial interference until an administrative decision has been

19   formalized and its effects felt in a concrete way by the challenging parties"
     *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967). 538 U.S. at 807.

20           . . . .

21   Determining whether administrative action is ripe for judicial review requires us
     to evaluate (1) the fitness of the issue for judicial decision, and (2) the hardship

22   to the parties of withholding court consideration. . . . a regulation is ordinarily
     considered the type of agency action 'ripe' for judicial review under

23   the[Administrative Procedures Act (APA)] until the scope of the controversy has
     been reduced to more manageable proportions, and its factual components

24   fleshed out, by some concrete action appllying the regulation to the claimant's
     situation in a fashion that harms or threatens to harm him. *Ibid* at 808.

25       The Court then turned to the question of hardship.  Because the National Park Service

26
     was not charged with administering the CDA, and had no rule making power, the Court treated
27

28   Response to Defendant's Motion to Dismiss        3              WHA 11-6145

1   the regulation as nothing more than a statement of policy designed to inform the public of NPS's

2   position.  It did not "command anyone to do anything or refrain from doing anything."It also

3   found that the regulation did not affect a concessionaire's primary conduct.  The Court used

4   *Toilet Goods Assn, Inc.v. Gardner*, 387 U.S. 158 (1967) as an example of where a case was not

5   ripe for a lack of showing hardship.  The Court noted:

> We concluded the case was not ripe for judicial review because the impact of
> the regulation could not 'be said to be felt immediately by those subject to it in
> conducting their day-to-day affairs" and no irremediablly adverse consequences
> flow[ed] from requiring a later challenge. *Ibid* at 164

9       The Court did not consider the case ripe, although it was primarily a legal issue, because

10  there were some kinds of concession contracts that might be covered by the CDA Under those

11  conditions the Court decided that it would be better to wait until there was a concrete dispute

12  about a concession contract.

13      In *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) the issue was a regulation

14  promulgated by the FDA requiring all drug manufacturers to publish the established (generic)

15  name of a drug each time the brand name of the drug was used.  Congress had only required this

16  on labels of products.  The regulation expanded the requirement to other items, such as

17  advertisement.  The Plaintiff's challenged the regulation as going beyond the intent of

    Congresss.

19      *Abbott* first found that the issues were appropriate for judicial resolution because the

20  issues were purely legal ones.  *Abbott* at 149.  Then the Court found the regulation "final agency

21  action" within the meaning of the APA beause final agency action includes any "rule" "defined

22  by the Act as 'an agency statement of general or particular applicability and future affect

23  designed to implement, interpret, or presribe law or policy.'" *ibid.*  The Court then addressed the

    issue of hardship as it relates to ripeness.

> This is also a case in which the impact of the regulations upon the petitioners is
> sufficiently direct and immediate as to render the issue appropriate for judicial
> review at tis stage.  These regulations purport to give an authoritative
> interpretation of a statutory provision that has a direct effect on the day-to-day
> business of all prescription drug companies, its promulation puts petitioners in a

28  Response to Defendant's Motion to Dismiss      4             WHA 11-6145

dilemma that it was the very purpose of the Declaratory Judgment Act to amelioraate. *Abbott, supra.* at 153.

B.       The Issues in Plaintiff's Action are Ripe for Adjudication

(1)       The fitness of the issue for judicial decision

This matter presents an issue that is purely legal; the proper interpretation of 38 U.S.C. §8127 . The VA interprets it as allowing the use of the GSA's FSS to acquire supplies and services before using veteran set-asides and Plaintiff alleges that the proper reading of the statute requires the VA to first conduct market research to determine if there are two or more veteran owned small businesses which are likely to submit bids at a reasonable price, and if there are, to set-aside the acquisition for competition limited to veteran owned small businesses.

The issue is not the effect of the press release announcing to the public the VA's policy with regard to using the FSS, it is the VA's iterpretation of its own acquisition regulation and the statute.  The VA was giving preference to the FSS for acquisitions long before the press release was issued.  The press release states that the VA "has consistently interpreted the law" as announced in the press release.

Waiting would not produce any factual development that would significantly advance the court's ability to deal with the legal issues involved.  Plaintiff alleges veteran set-asides are mandatory if the triggering conditions in 38 U.S.C. §8127(d) are met, *i.e.* two or more veteran owned small businesses which are likely to submit bids at a reasonable price.  Defendat denies that this is a proper reading of the statute.  The proper interpretation does not depend on the circumstances.

Contrary to Defendant's assertions, this court does not require a particular acquisition to find the issues ripe.  It does not matter if the acquisition is for supplies or services, what the service or supply item is, or the quantity.  That information does not refine the issues or add to the court's understanding of the issues.

(2) the Hardship to the Parties of Withholding Court Consideration

1    One of the considerations for not finding the regulation on NPS concession contracts ripe

2  in *NPC* was that the regulation did not "command anyone to do anything or to refrain from

3  doing anything."  In contrast, in this matter the VA has announced that it will continue to prefer

4  FSS acquisitions over veteran set-asides.  This is an active process.  Contracting officers will

5  continue to refer acquisitions to GSA's FSS program instead of using veteran set-asides.  Thus,

6  while Plaintiff will not be required to do anything, VA contracting officers are required to

7  continue do something that damages veteran owned small business.

8    Another consideration in *NPH* and *Abbott* was whether the regulation affected a party's

9  primary conduct.  In *NPH* the court decided it did not, while in *Abbott* the court found it did

10  affect the petitioners day-to-day activities.  Here the VA policy goes to the heart of Plaintiff's

11  primary conduct, competing for VA contracts.

12    Plaintiff alleged in paragrph 15 of its complaint

13  By continuing to meet its acquisitions through the GSA's FSS, the DVA is
14  causing hardship and irreparable injury to SDVOSB's because it denies
    SDVOSBs the opportunity to bid on DVA's requirements for supplies and
    services and denies them the opportunity to bid on DVA contracts that should be
15  set-aside for competition limited to other SDVOSBs as intended by Congress.

16    Thus, Plaintiff's action is ripe for judicial review. The statement of *Duke Power v.*

17  *Carolina Environmental*, 438 U.S. 59 at 81-82, provides the reasons why this court should find

18  Plaintiff' action ripe for judicial review.

19  The prudential considerations embodied in the ripeness doctrine also argue
20  strongly for a prompt resolution of the claims presented. Although it is true that
    no nuclear accident has yet occurred, and that such an occurrence would
21  eliminate much of the existing scientific uncertainty surrounding this subject, it
    would not, in our view, significantly advance our ability to deal with the legal
22  issues presented, nor aid us in their resolution. However, delayed resolution of
    these issues would foreclose any relief from the present injury suffered by
23  appellees -- relief that would be forthcoming if they were to prevail in their
    various challenges to the Act. Similarly, delayed resolution would frustrate one
24  of the key purposes of the Price-Anderson Act -- the elimination of doubts
    concerning the scope of private liability in the event of major nuclear accident.
25  In short, all parties would be adversely affected by a decision to defer definitive
    resolution of the constitutional validity *vel non* of the Price-Anderson Act. Since
26  we are persuaded that "we will be in no better position later than we are now" to
    decide this question, [citation omitted], we hold that it is presently ripe for
27  adjudication.

28  Response to Defendant's Motion to Dismiss      6              WHA 11-6145

1    Defendant's position that there must be a specific acquisition by a specific veteran

2    owned small business would mean the action had to be a bid protest to be ripe, but then as the

3    next section shows, this court would not have jurisdiction if it was a bid protest.

4

5

6

7    IV.    This Court Has Jurisdiction

8    Defendant's argument that thi action is within the exclusive jurisdiction of the Court of

9    Federal Claims is wrong.  While the amendment to 28 U.S.C. §1491(b) gave exclusive

10   jurisdiction over bid protests to the Court of Federal Claims, it only gave a right of action to an

11   "interested party" and this limits the COFC's jurisdiction.

> (1) Both the Unites [sic] States Court of Federal Claims and the district courts of
> the United States shall have jurisdiction to render judgment *on an action by an*
> *interested party* objecting to a solicitation by a Federal agency for bids or
> proposals for a proposed contract or to a proposed award or the award of a
> contract or any alleged violation of statute or regulation in connection with a
> procurement or a proposed procurement. Both the United States Court of
> Federal Claims and the district courts of the United States shall have jurisdiction
> to entertain such an action without regard to whether suit is instituted before or
> after the contract is awarded. Emphasis added.

The scope of the jurisdiction granted to the Court of Federal Claims in 28 U.S.C.

§1491(b)(1) was determined by the decision in *American Fed. Of Gov. Employees v. United*

*States*, 258 F.3d.. 1294 (Fed. Cir. 2001).  In that case the issue was whether a cost comparison

had been correctly calculated.  Based on the comparison of the cost to perform the work by

government employees in house and the cost to contract out the work to a private concern, the

court held that two government employees that would lose their jobs based on the comparison

were not "interested parties" and so did not have standing to challenge the cost comparison in

the Court of Federal Claims.

The court noted that there was no definition of "interested party" in the ADRA but that

Congress had used the term "interested party" in another procurement statute, the Competition

Response to Defendant's Motion to Dismiss      7                    WHA 11-6145

1    in Contracting Act. 31 U.S.C. § 3551(2)  This statute established, among other things, the

2    authority and jurisdiction of the Government Accountability Office to hear bid protests.  The

3    court adopted the more restricted meaning of interested party in CICA as the standing and

4    jurisdiction basis for the Court of Federal Claims.  This tied interested party to the requirement

5    that a party be an actual or a potential bidder.  Because the plaintiffs were neither, the Court of

6    Federal Claims did not have jurisdiction.

7            The requirement that a litigant be an interested party to give jurisdiction in the Court of

8    Federal Claims  limits the jurisdiction of that Court even if the agency action falls within 28

9    U.S.C §1491(b)'s wide net of "in connection with a procurement or a proposed procurement."

10           The requirement that a plaintiff be an interested party to have jurisdiction under 28

11   U.S.C. §1491(b) is especially important when considering whether a concern can challenge the

12   VA's decision to use the FSS to fulfill an acquisition of supplies or services.  This is because a

13   concern that does not hold a FSS contract can not be an "interested party" to protest VA's use of

14   an FSS contract.  VA is well aware of the legal authorities holding that a concern that does not

15   hold a FSS contract is not an interested party to protest the use of FSS to meet VA's needs.

16           *Mobile Medical Intern Corp. v. U.S.*, 95 Fed. Cl. 706 (2010) A non-FSS contractor

17   cannot challenge a task order awarded through the FSS because it cannot qualify as an actual or

18   prospective bidder, given that FSS program contracts are awarded to pre-qualified , prospective

19   FSS contractors.

20           GAO has determined that when an agency conducts an acquisition under either a

21   mandatory or optional-use FSS contract, a vendor that is not an FSS contract holder is not an

22   interested party to challenge such an acquisition. *FitNet Purchasing Alliance,* B-309911,

23   November 2, 2007, 207 CPD ¶ 201

24           As stated in *Mobile Medical Intern. Corp. v. United States,* Fed. Cl. 706 (2010).

25           Generally, a non–FSS contractor, such as MMIC, cannot challenge a task order
         awarded through the FSS because it cannot qualify as an actual or prospective
26       bidder given that FSS program contracts are awarded to prequalified,
         prospective FSS contractors.  Therefore, prospective contractors who were not
27       prequalified as FSS contractors would not normally be in the category of "actual

28

1    or prospective bidders whose direct economic interest would be affected by the
     award of the contract or by failure to award the contract.  (quoting *Am. Fed.*
2    *Gov't Employees v. United States* 258 F3d at 1302) at 1307.

3         Plaintiff cannot be considered an interested party as it is not a bidder or prospective.

4    Therefore, the District Court rather than the Court of Federal Claims has jurisdiction over this

5    matter.

6

7                                    CONCLUSION

8         For the reasons presented above, Plaintiff reequests that Defendnat's motion to dismiss

9    be denied.

10

11        Dated: February 23, 2012

12

13        /s/ Timothy H. Power

14        Attorney for Plaintiff.

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Response to Defendant's Motion to Dismiss        9                    WHA 11-6145